550 S.E.2d 898

The DEPARTMENT OF SOCIAL SERVICES, Respondent,

v.

MRS. H and Mr. H, Appellants.

No. 3364.

Court of Appeals of South Carolina.

Heard May 8, 2001.
Decided July 2, 2001.
Rehearing Denied Aug. 22, 2001.

Charles T. Brooks, III, of Sumter, for appellants.

Sharon Baker Clark, of Sumter, for respondent.

HUFF, Judge:

Mrs. H and Mr. H appeal from an order of the family court terminating their parental rights to two minor children, the older child and the younger child. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Mrs. H is the natural mother of the older child and the younger child. Mr. H is the younger child's natural father and the older child's stepfather.

Law enforcement officers took the older child into emergency protective custody on June 2, 1992, after the Department of Social Services (DSS) received a report alleging she had been sexually abused, had bruises on her legs, and had head lice. The younger child was taken into emergency protective custody pursuant to an ex parte order dated August 28, 1992, due to risk of sexual abuse.

After a merits hearing in October of 1992, the family court, by its order dated December 15, 1992, continued custody with DSS. In its order, the court found: (1) Mr. H had inappropriately touched the older child in her vaginal area; (2) Mrs. H would be unable or unwilling to protect the child from such abuse because she did not believe the abuse occurred; and (3) Mr. H's conduct with the older child placed the younger child in danger "until such time as Mr. H and Mrs. H can be rehabilitated. . . ." In the same order, the court approved a treatment plan for Mr. H and Mrs. H and directed both parents to comply with its terms.

Mrs. H and Mr. H filed a pro se motion dated December 29, 1992, seeking reconsideration of the December 15, 1992 order pursuant to Rule 60(b)(1), (2), (3), (4), and (5), based on newly discovered evidence.[1] A hearing on the motion was set for September 23, 1993, but was subsequently continued. Mr. H and Mrs. H through their attorney, filed an amended motion to reconsider on November 30, 1993, and the court rescheduled the hearing for December 14, 1993. On the same day, DSS filed a return opposing the motion, and the hearing was rescheduled for December 17, 1993. After the December 17th hearing, the court issued an order dated January 24, 1994, continuing the hearing and finding the motion should be heard by the judge who issued the December 15, 1992 order.

Subsequent to the December 15, 1992 order and up until April 1998, the family court held numerous review and motion hearings. In September of 1993, the family court continued custody of the children with DSS and ordered Mrs. H and Mr. H to continue counseling and "cooperate with the professionals." Following an August 1994 review hearing, the court

---

1. In response to the court's questioning at oral argument, Mrs. H's and Mr. H's counsel acknowledged the motion was made pursuant to Rule 60, rather than Rule 59, SCRCP.

found a "significant aspect of the Treatment Plan," that Mr. H and Mrs. H receive individual counseling, had not materialized, and that the children should remain in foster care. The court ordered Mrs. H and Mr. H to promptly arrange to begin counseling and noted, if Mrs. H and Mr. H failed to attend counseling, it would be an indication to the court that they "did not wish to remediate the problems which necessitated the removal of the children." In February of 1995, the court suspended Mr. H's visitation with the older child and encouraged Mrs. H and Mr. H to cooperate with the treatment plan. In May of 1995, the court held two hearings, one on the issue of evaluation of the children by Mrs. H's and Mr. H's counselor and another on the issue of whether Mr. H should be allowed to resume visitation with the older child. By order dated June 21, 1995, the court found that the detriment to the older child in allowing such visitation outweighed any benefit therefrom, and the order suspending that visitation should remain in force. The court further urged Mrs. H and Mr. H to be faithful to the treatment plan.

In 1995, Mrs. H and Mr. H filed a complaint, and in 1996 an amended complaint, seeking to regain custody of the children. On September 11, 1997, DSS filed this action for termination of parental rights. By order dated October 2, 1998, the family court consolidated all of the pending actions, including Mrs. H's and Mr. H's action to regain custody, and all issues were preserved for a final hearing on the merits.

The family court held the final hearing on the consolidated actions on November 17, 18, and 19, 1999. By order dated January 4, 2000, the court terminated Mr. H's parental rights as to the younger child, and terminated Mrs. H's parental rights as to both the younger child and the older child.[2] The court also directed DSS to devise a permanent placement plan for the children. Regarding Mr. H, the court specifically found, despite identification by DSS of the conditions leading to removal and meaningful efforts of the agency to provide appropriate rehabilitative services, clear and convincing evidence indicated Mr. H failed to complete his treatment plan

2. Pursuant to the same order, the family court terminated the parental rights of the older child's natural father, who is not a party to this appeal.

and, therefore, never remedied the conditions which caused the younger child's removal from the home. The court further found that termination of Mr. H's parental rights was proper based on the undisputed evidence that the younger child had been in foster care for fifteen of the twenty-two months preceding trial. As to termination of Mrs. H's parental rights, the court found that she too had failed to remedy the conditions which caused removal of the children, inasmuch as she continued to believe Mr. H had not committed the alleged abuse and, therefore, she continued to be unable or unwilling to protect them from the risk of abuse. As well, the court found termination of Mrs. H's parental rights proper on the ground the children had been in foster care for fifteen of the most recent twenty-two months preceding trial of the case. Mrs. H and Mr. H filed a post trial motion for reconsideration, which was denied. This appeal followed.

## STANDARD OF REVIEW

Grounds for termination of parental rights must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker,* 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct.App.1999); *Greenville County Dep't of Soc. Servs. v. Bowes,* 313 S.C. 188, 193, 437 S.E.2d 107, 110 (1993). On appeal of a termination of parental rights case, this court may review the record and make its own finding of whether clear and convincing evidence supports the termination. *S.C. Dep't of Soc. Servs. v. Broome,* 307 S.C. 48, 54, 413 S.E.2d 835, 839 (1992) ("The appellate court may review the record on appeal on the issue of termination of parental rights and make its own finding as to whether such termination is supported by clear and convincing evidence."). Statutes involving the termination of parental rights "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent child relationship. The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C.Code Ann. § 20-7-1578 (Supp.2000); *Joiner ex rel Rivas v. Rivas,* 342 S.C. 102, 108, 536 S.E.2d 372, 375 (2000).

*LAW/ANALYSIS*

I.

On appeal, Mrs. H and Mr. H assert the family court lacked jurisdiction to proceed with the termination of parental rights action because their December 29, 1992 motion for reconsideration of the court's December 15, 1992 order was never heard. We disagree.

■ At the onset of the final hearing on November 17, 1999, Mrs. H's and Mr. H's attorney brought to the court's attention the fact that the court had never held a hearing on Mrs. H's and Mr. H's Rule 60 motion for reconsideration of the family court's order of removal dated December 15, 1992. The court found it had "directed back in 1993 that [the Rule 60 motion hearing] be scheduled in front of the [trial judge who held the removal hearing], and it was not done." It determined "[t]hat it should have been heard and it is incumbent upon the moving party to see that it is heard . . . in conjunction with . . . the trial judge." Noting the numerous review and motion hearings conducted over the seven year period since the initial filing of the motion to reconsider, the court determined, having participated in these hearings, Mrs. H and Mr. H waived and abandoned the opportunity to have the Rule 60 motion heard.

The family court has exclusive jurisdiction over all proceedings involving the termination of parental rights. S.C.Code Ann. § 20-7-1562 (Supp.2000); *S.C. Dep't of Soc. Servs. v. Smith,* 343 S.C. 129, 538 S.E.2d 285 (Ct.App.2000). Mrs. H and Mr. H assert, however, the TPR court was divested of jurisdiction until such time as the motion for reconsideration of the removal order could be heard.

We recognize, as noted by Mrs. H and Mr. H on appeal, that the family court in its January 24, 1994 order continued the hearing on their Rule 60 motion and found the motion should be heard by the judge who issued the December 15, 1992 order, but this hearing never actually occurred. There is no indication in the record, however, that Mrs. H and Mr. H sought to have the hearing rescheduled at any time after the January 24, 1994 order, even though several subsequent hearings were conducted and approximately six years elapsed

between the time Mrs. H and Mr. H filed the amended motion in 1993 and the final hearing was held in 1999. It was incumbent on Mrs. H and Mr. H to reschedule the motion for hearing before the removal judge, as directed by the January 24, 1994 order. Under these circumstances, we are inclined to agree with the trial court's treatment of Mrs. H's and Mr. H's Rule 60 motion as having been waived. *Accord Johnson v. Hampton Indus., Inc.*, 83 N.C.App. 157, 158, 349 S.E.2d 332, 333 (1986) (where the North Carolina Court of Appeals held defendant waived its right to change of venue where it failed to press the motion until some ten months after it was filed, although the motion "could have been calendared for hearing at many earlier court sessions").

Moreover, Mrs. H and Mr. H have not appealed the December 15, 1992 order. Rule 60(b) specifically provides that "[a] motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation." Rule 60(b), SCRCP. In addition, our Supreme Court has held that "any order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order that a party must timely appeal." *Hooper v. Rockwell*, 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999). Based on the operation of Rule 60 and the applicable case law, the December 15, 1992 order is the law of the case.

Accordingly, we find no error in the family court's decision to proceed with the action for termination of parental rights despite the fact that no hearing took place on Mrs. H's and Mr. H's Rule 60 motion.

## II.

■ Next, Mrs. H and Mr. H assert the family court erred in determining they failed to remedy the conditions which caused removal. We disagree.

Mrs. H's and Mr. H's parental rights were terminated pursuant to, inter alia, § 20–7–1572(2), which provides for termination of parental rights if "[t]he child has been removed from the parent pursuant to Section 20–7–610 or Section 20–7–736, has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between the department and the parent, and

the parent has not remedied the conditions which caused the removal." S.C.Code Ann. § 20–7–1572(2) (Supp.2000).

Here, the children were removed pursuant to S.C.Code Ann. § 20–7–736(B) (Supp.2000) which provides, in relevant part:

(B) Upon investigation of a report received under Section 20–7–650 or at any time during the delivery of services by the department, the department may petition the family court to remove the child from custody of the parent, guardian, or other person legally responsible for the child's welfare if the department determines by a preponderance of evidence that the child is an abused or neglected child and that the child cannot be safely maintained in the home in that he cannot be protected from unreasonable risk of harm affecting the child's life, physical health, safety, or mental well-being without removal.

The record shows Mr. H failed to complete his treatment plan. One of the provisions of the plan was that he acknowledge the incident of sexual abuse and seek counseling for sexual offenders. The plan also provided for Mrs. H to successfully complete a therapy program, acknowledging Mr. H as the perpetrator of the sexual abuse, so that she could provide protection for her daughters. Although Mr. H attended counseling sessions, the sessions geared toward sexual abuse treatment were discontinued because he refused to admit the abuse occurred. It is further uncontested Mrs. H has steadfastly denied any abuse on the part of Mr. H.

Mrs. H and Mr. H assert that in devising a treatment plan, DSS expanded the family court's December 15, 1992 finding of "inappropriate touching" to allege sexual abuse when there had been no such finding. The crux of Mrs. H's and Mr. H's argument is, therefore, that their failure to complete the treatment plan should not serve as grounds for termination because the treatment plan was inappropriately designed for sexual abusers/molesters.

We disagree with Mrs. H's and Mr. H's characterization of the family court's December 15, 1992 order as not including a finding of sexual abuse. Although the court did not expressly describe Mr. H's behavior as sexually abusive, the court did find "inappropriate touching of [the older child's] vaginal area by her stepfather," and the court went on to characterize the

behavior as abuse. In our view, even though the court did not employ the term "sexual abuse," the court's finding of an abusive, inappropriate touching of the child's vaginal area is tantamount to a finding of sexual abuse. *See* S.C.Code Ann. § 20–7–490(2) (Supp.2000) (" 'Abused or neglected child' means a child ... whose physical or mental health or welfare is harmed or threatened with harm as defined by items (3) and (4), by the acts or omissions of the child's parent, guardian, or other person responsible for his welfare."). *See also,* S.C.Code Ann. § 20–7–490(3) (Supp.2000) (" 'Harm' to a child's health or welfare can occur when the parent, guardian, or other person responsible for the child's welfare: ... (b) commits or allows to be committed against the child a sexual offense as defined by the laws of this State."). *See also* S.C.Code Ann. § 16–3–655(1) (1985) ("A person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual battery with the victim who is less than eleven years of age."); S.C.Code Ann. § 16–3–651(h) (1985) (" 'Sexual battery' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes."); S.C.Code Ann. § 16–15–140 (Supp.2000) ("It is unlawful for a person over the age of fourteen years to wilfully and lewdly commit or attempt a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child."); S.C.Code Ann. § 17–25–135 (Supp.2000) (Entry of sex offenders on Central Registry of Child Abuse and Neglect upon conviction of certain crimes.... (B) "For purposes of this section: ... (2) "Sexual abuse" means: (a) actual or attempted sexual contact with a child....").

Further, we are compelled to agree with the family court that Mrs. H's and Mr. H's failure to complete the treatment plan precluded them from remedying the conditions which caused removal. Pursuant to the treatment plans, both Mr. H and Mrs. H were to attend counseling. Mr. H was to attend a program for sex offenders "to work through his denial and learn appropriate behavior with children." Mrs. H was also to

attend counseling and work on the obstacle that she "had not dealt with her own physical and sexual abuse or that of the older child, and would not be able to protect her children until she did so." Without an acknowledgment of the incident on the part of Mrs. H and Mr. H, DSS considered placement of the children back in the home infeasible, because the children would not be safe.

DSS's expert witness testified the older child had been sexually abused and her healing process could not continue absent an admission from her abuser. She further testified that, where the abuser refuses to acknowledge the abuse, it would be detrimental to the child's well-being to be exposed to her abuser. Further, the family court noted in its order of termination that "several psychological experts ... agreed that sexual offender counseling could never be successful without an admission on the part of the perpetrator that the abuse had taken place." *See Dep't of Soc. Servs. v. Pritchett,* 296 S.C. 517, 520, 374 S.E.2d 500, 501 (Ct.App.1988) ("It is significant to note the statute allows for termination of parental rights where the parent has *not remedied* the conditions causing removal. This does not suggest that an *attempt* to remedy alone is adequate to preserve parental rights. Otherwise, the statute would be couched in such terms. The attempt must have, in fact, remedied the conditions."). Under the facts and circumstances, we affirm the family court's decision that Mrs. H and Mr. H failed to remedy the conditions which caused removal and termination is proper on that ground.

### III.

Mrs. H and Mr. H next assert the family court erred in affording S.C.Code Ann. § 20–7–1572(8) (Supp.2000) [3] retroactive effect in reaching its determination as to termination of parental rights on this ground. Because we have determined termination of parental rights was properly accomplished pursuant to § 20–7–1572(2), we decline to address the issue of

---

**3.** Section 20–7–1572(8) provides for termination upon a finding that termination is in the best interest of the child and "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months." This subsection was added by 1998 Act No. 391, with an effective date of June 15, 1998.

whether the family court properly applied § 20–7–1572(8) retrospectively.

For the foregoing reasons, the decision of the family court is **AFFIRMED.**

ANDERSON and SHULER, JJ., concur.