THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services,       
Respondent,
 
 
 

v.

 
 
 
Debra Mathews and John Doe the unknown father of Letisha Mathews, and 
 Letisha Mathews DOB 4/19/93,        Defendants,
of whom Debra Mathews is       
Appellant.
 
 
 

Appeal From Marion County
Mary E. Buchan, Family Court Judge

Unpublished Opinion No. 2004-UP-331
Submitted May 12, 2004  Filed May 17, 
 2004

AFFIRMED

 
 
 
Mary Jaques Ryan, of Loris, for Appellant.
Timothy H. Pogue, of Marion, for Respondent.
 
 
 

 PER CURIAM:  Debra Mathews appeals 
 the termination of her parental rights. [1]   We affirm.
FACTS
The South Carolina Department of Social 
 Services (DSS) commenced this action after taking emergency protective custody 
 of Letisha Mathews.  Letisha, a minor child born on April 19, 1993, suffers 
 from cerebral palsy.  Letisha has special needs, illustrated by the fact that 
 she walks with a limp, has a speech deficiency, and requires special medical 
 care.       
On February 21, 2001, following a hearing 
 pursuant to section 20-7-610 of the South Carolina Code, the family court issued 
 an order granting DSS custody of Letisha.  The court based its ruling primarily 
 on the fact that on several occasions, no one was present to care for Letisha 
 when she returned home from school. [2]   The order also mentions that 
 Ms. Mathews was informed of her right to have an attorney and the procedure 
 by which she could have one appointed. 
On February 23, 2001, after a merits hearing 
 and pursuant to an agreement between the parties, the court affirmed its award 
 of custody to DSS, and ruled that a treatment plan presented to Ms. Mathews 
 by DSS was fair, equitable, and in the best interests of Letisha.  This order 
 reflects that prior to the hearing, Ms. Mathews was properly served with notice 
 of her right to counsel.  
The parties attended a permanency planning 
 hearing on January 29, 2002.  On February 8, 2002, the court issued an order 
 finding it would be in Letishas best interest to remain in the custody of DSS, 
 that DSS should seek termination of Ms. Mathews parental rights, and that DSS 
 continue the treatment plan it presented at the merits hearing.  The order notes 
 that per her request, Ms. Mathews was allowed to represent herself.   
On April 3, 2002, DSS filed a complaint seeking 
 termination of Ms. Mathews parental rights.  The complaint alleged, among other 
 things, that Letisha had been removed from her home for at least six months 
 and Ms. Mathews had failed to remedy the conditions that caused her removal. 
 [3]   The parties met for a hearing on July 23, 2002.  Deciding her rights 
 should be terminated, the family court relied in part on the testimony of Dr. 
 Neely, who performed psychological evaluations of Ms. Mathews.  In Dr. Neelys 
 opinion, Ms. Mathews is unable to properly care for Letisha without having someone 
 present to provide assistance.  The court issued its order terminating Ms. Mathews 
 parental rights on September 4, 2002.  Ms. Mathews was represented by counsel 
 at the final hearing.           
ISSUES

 
 Did the family court err in ruling DSS proved by clear and convincing evidence 
 that Ms. Mathews failed to remedy the conditions leading up to the removal of 
 her child?
 
 
 Did the family court err in allowing Ms. Mathews to represent herself at all 
 hearings other than the final termination of parental rights hearing?

STANDARD OF REVIEW
In a termination of parental rights 
 (TPR) case, the best interests of the children are the paramount consideration.  
 Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 
 2003) (citing South Carolina Dept of Soc. Servs. v. Smith, 343 S.C. 
 129, 133, 538 S.E.2d 285, 287 (Ct.App.2000)).  Before a parents rights may 
 be terminated, the alleged grounds for termination must be proven by clear and 
 convincing evidence.  Dept of Soc. Servs. v. Mrs. H, 346 S.C. 329, 333, 
 550 S.E.2d 898, 901 (Ct. App. 2001).  
On appeal, this court may review the record 
 and make its own determination of whether the grounds for termination are supported 
 by clear and convincing evidence.  Id.; see also South 
 Carolina Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 293, 547 S.E.2d 
 506, 509 (Ct. App. 2001).  However, despite this broad scope of review, this 
 court is not required to disregard the findings of the family court nor ignore 
 the fact that the trial judge was in a better position to evaluate the credibility 
 of the witnesses.  Dorchester County Dept of Soc. Servs. v. Miller, 
 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).  
DISCUSSION
I.       Clear and Convincing Evidence
Ms. Mathews first argues the family court erred 
 in ordering termination of her parental rights because DSS failed to prove by 
 clear and convincing evidence that she failed to remedy the conditions leading 
 up to her childs removal.   Specifically, Ms. Mathews attacks the quality of 
 Dr. Joe Neelys investigation and makes a concomitant allegation that certain 
 witnesses merely adopted the doctors position.   The evidence in the record, 
 however, belies this argument.
Dr. Neely had an adequate opportunity 
 to examine Ms. Mathews and arrive at his conclusions.  The family court judge 
 assigned weight to Dr. Neelys testimony, and we concur with this assessment.  
 In fact, Ms. Mathews objective living of life falls in line with his opinion 
 that she is a very impulsive woman who does not make really good decisions.  

Ms. Mathews lifestyle reflects 
 a pattern of placing her own interests above Letishas interest.  In 1998, for 
 example, Ms. Mathews placed Letisha with some friends while she went on vacation 
 with a truck driver.  Ms. Mathews informed her friends that she would return 
 for Letisha in a week.  After several weeks with no word from Ms. Mathews, these 
 friends notified DSS.  DSS took custody of Letisha.  Similarly, since Letisha 
 was first removed from Ms. Mathews home at the start of the current action, 
 Ms. Mathews has moved seven different times.  She also has had many different 
 boyfriends during this period. 
There are also Ms. Mathews repeated failures 
 to meet Letisha when she arrives home from school, or to make arrangements for 
 someone else to meet Letisha at the bus stop.  This resulted on many occasions 
 the school bus driver having to return Letisha to school.  In fact, the current 
 action began after the fifth such incident.  On another occasion, an earlier 
 investigation revealed that Donald Green, one of Ms. Mathews male friends and 
 the person supposedly taking care of Letisha, smelled of alcohol.  Although 
 the treatment plan proposed by DSS mandated that Ms. Mathews attend anger management 
 classes, she openly admitted she still has problems controlling her temper.    

Considering this history, there is more 
 than enough evidence in the record to support Dr. Neelys testimony, and particularly 
 his opinion that if Letisha were returned to Ms. Mathews there should be an 
 extremely high level of supervision.  
 As for Ms. Mathews allegation that DSSs 
 other witnesses merely rubber stamped Dr. Neelys opinions, the record does 
 not support this contention.  It is clear from the record each of these witness 
 had an independent history of dealing with Ms. Mathews, and each had the opportunity 
 to arrive at their own conclusions regarding her fitness as a parent and, significantly, 
 the likelihood Ms. Mathews would remedy the conditions which necessitated removal.
For instance, Peggy Bryant testified to 
 much of the behavior outlined above.  She further testified to being present 
 at times when she felt Ms. Mathews behavior towards Letisha was inappropriate.  
 Finally, Ms. Bryant testified that DSS sought to terminate Ms. Mathews parental 
 rights based on her failure to rehabilitate.  According to Ms. Bryant, as of 
 January 2002, Ms. Mathews failed to complete a number of objectives outlined 
 in the treatment plan.  Of particular importance was Ms. Mathews failure to 
 understand the importance of providing appropriate supervision and stable housing 
 for Letisha.  Although Ms. Bryant did testify that DSS relied in part on Dr. 
 Neelys opinion in making its determination that Ms. Mathews would be unable 
 to complete her rehabilitation, it is clear Ms. Bryant arrived at her own conclusions 
 regarding Ms. Mathews fitness as a parent.
Similarly, Mrs. Marley, the guardian ad 
 litem, testified about her experiences with Ms. Mathews.  Although Mrs. Marley 
 testified she agreed with Dr. Neelys opinion that Ms. Mathews repeatedly makes 
 poor decisions, she provided specific examples which gave rise to her independent 
 conclusions.  Specifically, Mrs. Marley stated, I have observed mom in many 
 different homes with different relationships.  And I  and thats my opinion.  
 It happens to be the doctors.  As such, it is clear Mrs. Marley did not merely 
 adopt Dr. Neelys opinion as her own.     
In an attempt to bolster her position 
 that the conditions leading up to removal of Letisha have been remedied, Ms. 
 Mathews mentions that her mother, Mrs. Robinson, agreed to move into her home 
 to provide Letisha with after-school care.  However, as DSS correctly points 
 out, this is not exactly a true assertion.  Mrs. Robinson testified that while 
 she would be willing to watch Letisha after school, she would not be able to 
 live with them because she had her own home to run, too.    Mrs. Robinson 
 also testified that Ms. Mathews never asks for her help when there is a man 
 in her house.  The limitations Mrs. Robinson places on her ability to care for 
 Letisha are significant when one considers Ms. Mathews history of frequent 
 moves and her habit of dating a number of men for short periods of time.  
Because we find the evidence supports 
 the family courts findings, findings with which we concur, we conclude DSS 
 established that Ms. Mathews parental rights should be terminated by clear 
 and convincing evidence.
II.      Counsel
Ms. Mathews argues on appeal that the 
 family court erred in allowing her to represent herself at all hearings other 
 than the final termination of parental rights hearing.  As an initial matter, 
 this issue was not properly preserved for our review.  From the record it does 
 not appear any challenges were made to the family court raising this issue.  
 At the very least, there was no specific assignment of error, although the record 
 does contain testimony related to the absence of an attorney.  
In addition, the family courts final order is 
 completely silent as to this issue.  If it were an issue as Ms. Mathews now 
 asserts, appellate preservation rules would have required a Rule 59(e), SCRCP 
 motion.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 
 731, 733 (1998) (stating that an issue cannot be raised for the first time on 
 appeal, the issue must have been raised to and ruled upon by the trial court).  
 In this case, such a motion was not made.  Therefore, technically this argument 
 is not preserved for our review.
However, because we understand the importance 
 of thoroughly reviewing matters where termination of parental rights is at stake, 
 we have examined this alleged point of error even though it was not properly 
 preserved.  See Joiner ex rel. Rivas v. Rivas, 342 S.C. 102, 107, 
 536 S.E.2d 372, 374 (2000) (holding that it is not error to rule on an issue 
 raised to but not ruled on by the family court because procedural rules are 
 subservient to the courts duty to zealously guard the rights of minors).
Ms. Mathews would have us assign weight to the 
 absence of an attorney in all hearings other than the final termination of parental 
 rights hearing.  This position is heightened by an effort on appeal to cast 
 herself in a more deficient light mentally than the record actually supports.  
 Ms. Mathews, in this court, seeks to draw an inconsistency between Dr. Neelys 
 opinion that she possesses a borderline to low average range intelligence, 
 and the trial courts determination that she was able to waive her right to 
 counsel and represent herself.  We find no reversible error.
While we do have concerns with Ms. Mathews mental 
 state, it is clear from the record she is able to function in society.  It may 
 be true that she does function in the low to average range of intelligence, 
 but this alone is not dispositive of the question before us.  Many good parents 
 fall within this category and are still able to care for their children.  
Our review convinces us that Ms. Mathews possesses 
 the necessary level of mental functioning to competently waive her right to 
 counsel and should she choose to, act as a fit parent.  However, we agree 
 with the family court and arrive at the conclusion that Ms. Mathews parental 
 rights were properly terminated.  This determination does not arise from her 
 purported deficient mental status, but from the lack of stability in her life 
 and her consistent pattern of exercising poor judgment as far as the care of 
 her daughter is concerned.  
As noted previously, Ms. Mathews has a history 
 of following her own interests in lieu of Letishas.  In 1998, DSS exercised 
 protective custody of Letisha after Ms. Mathews failed to return from a vacation.   
 On five occasions, Ms. Mathews has failed to ensure someone was home to care 
 for Letisha after school.  Although she asserts her mother will move in to help 
 her take care of Letisha, her mother admits she has her own house to run and 
 Ms. Mathews does not ask for help when there is a man in her life.  To this 
 end, Ms. Mathews has a history of dating men, but not for significant periods 
 of time.  She has moved seven times since the current action began.  Ms. Mathews 
 has repeatedly made poor decisions and admits she does not always think before 
 she acts.  She also admitted to having problems controlling her temper.  
It is the type of behavior outlined above which 
 triggered the treatment plans promulgated by DSS.  It is also clear from the 
 record she had the ability to comply with the plans, as she did in part.  However, 
 it is the cumulative effect of this history that persuades us of the correctness 
 of the trial courts ruling and that termination of Ms. Mathews parental rights 
 is in Letishas best interest.  
CONCLUSION
The family courts decision to terminate the parental rights of Ms. 
 Mathews is
 AFFIRMED.
 ANDERSON, HUFF, and KITTREDGE, JJ., 
 concur.  

 
 
 [1]        Although the case originally included John Doe, Letishas 
 unknown father, only Ms. Mathews appeals from the family courts ruling.

 
 
 [2]        Specifically, the order states the complained of incident 
 was the fifth time Letisha returned home during the school year without proper 
 supervision.  

 
 
 [3]        See S.C. Code Ann. § 20-7-1572(2) (Supp. 2003).