THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services, Respondent,
v.
Robin Smalls, and Dontravis Anderson, DOB:  08/20/92 and Deandre Anderson, DOB:  10/26/93, Minors under the age of 18 years,
Defendants, 
of whom Robin Smalls is Appellant.
 
 
 

Appeal From Darlington County
Timothy L. Brown, Family Court Judge

Unpublished Opinion No. 2006-UP-110
Submitted February 1, 2006  Filed February 21, 2006

AFFIRMED

 
 
 
W. James Hoffmeyer, of Florence, for Appellant.  
Newton I. Howle, Jr., of Darlington, for Respondent.
Richard Edward Conner, Jr., of Hartsville, for Guardian Ad Litem.  
 
 
 

PER CURIAM:  Robin Smalls appeals a family court order terminating her parental rights as to her sons Dontravis (DOB:  8/20/92) and Deandre (DOB:  10/26/93).  We affirm.[1]
FACTS
The South Carolina Department of Social Services filed a complaint seeking to terminate Smalls parental rights based on the following contentions:  1) the children were removed from and have lived outside of Smalls home for a period of at least six months without Smalls remedying the conditions that caused the removal, 2) the children have been in foster care for fifteen of the last twenty-two months, 3) Smalls has willfully failed to support the children or make a material contribution to the childrens care, and 4) termination is in the best interests of the children.  
The family court held a hearing on March 1, 2005.  DSS caseworker Mae Stradford testified the children have been in foster care since 1994.[2]  The parental rights of the father have previously been terminated.  Smalls was under a court order to pay child support of $21.34 per week.  At the time of the hearing, Smalls was $1,053.72 in arrears in support payments.  Smalls made her last payment in April 2004.  Smalls visited the children on July 28, 2004 and on January 22, 2005.  Stradford testified Smalls had not done anything to remedy the conditions causing removal, including failure to follow her treatment plan as to employment, housing, and counseling.  Smalls was last employed in the spring of 2004, has recently moved numerous times, and last saw her counselor in July 2004.  
Dontravis suffers from cerebral palsy and attention deficit, hyperactive activity disorder, and currently resides in a therapeutic foster home where he has lived since 1994, when he was seventeen months old.  The foster parents intend to adopt Dontravis.  Deandre suffers from attention deficit disorder and resides in a foster home where he has been since 1994, when he was three months old.  He likewise is in the process of being adopted.  
Stradford testified the children were in loving homes, had their own rooms, and were much closer to their foster parents than to their mother.  Both sets of foster parents provided nurturing homes and had stable employment.  The childrens basic needs of food, medical care, and education were being met.  
On cross-examination, Stradford admitted she knew that in 2003 Smalls began caring for another son, Deshawn (approximately sixteen years old), and daughter, Matia (approximately ten years old), taking sole responsibility for Deshawns medication.  Stradford also admitted she did not visit Smalls often.  She explained, however, that she had been to Smalls home six or seven times over a twelve-month period and Smalls was not home or had moved without notification to DSS.  Stradford met with Smalls three times during that period.  
As to Smalls failure to attend counseling, Stradford recognized that Smalls counselor was in Florence and Smalls lived in Hartsville, creating a transportation problem.  Stradford explained that DSS provided transportation for counseling and on one occasion, Stradford sent a driver to Smalls home to transport her to a scheduled counseling session and Smalls was not at her residence.  
Nancy Gregg and her two daughters, Chanell and Tamiko, testified on Smalls behalf.  Chanell testified she has known Smalls for thirteen or fourteen years, Smalls baby-sits Chanells daughter, and Smalls keeps a clean house.  Chanell testified Smalls spends a lot of time with Matia and Deshawn, helping with homework, ensuring Deshawn takes his medication, and picking the children up every day from the school bus.  Chanell pays Smalls $50 per week for babysitting services.  Tamiko testified in a like manner regarding Smalls lifestyle.  Smalls baby-sits Tamikos two children overnight while Tamiko works third shift.  Tamiko claimed she did not pay Smalls for babysitting services.  Nancy also testified Smalls was a good mother.  Nancy explained that Smalls has a two-bedroom apartment and a pullout couch.  Nancy admitted, on any given day there would be four or five children in the apartment.  
Smalls testified she missed appointments with the counselor when she moved.  She explained she earned a parenting certificate and tried to do everything required by the treatment plan.  As to child support, she testified she paid regularly until she lost her job in April 2004.  She lost her job due to her move to Hartsville and resulting lack of transportation.  Smalls still has a valid certified nursing assistant certificate and explained her job search since then:  When I moved back to Hartsville, I was looking for a job in that same career, doing like nursing homes, but I called one but it was . . . too far to even . . . walk. . . .  She also applied to a few fast food restaurants.  Transportation allegedly remains the main impediment to Smalls employment.  As to visitation, Smalls testified she would sometimes call DSS to set up a visit, but she did not have a telephone to receive return calls.  She recently purchased a cellular phone but has never called Dontravis or Deandre.  Smalls testified she no longer receives AFDC assistance, but does receive food stamps, a utility check, and free living accommodations.  
The family court terminated Smalls parental rights to Dontravis and Deandre.  
STANDARD OF REVIEW
In a termination of parental rights
(TPR) case, the best interests of the children are the paramount consideration.  Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003).  Before a parents rights may be terminated, the alleged grounds for termination must be proven by clear and convincing evidence.  Department of Soc. Servs. v. Mrs. H, 346 S.C. 329, 333, 550 S.E.2d 898, 901 (Ct. App. 2001).  On appeal, this court may review the record and make its own determination of whether the grounds for termination are supported by clear and convincing evidence.  Id.  However, our broad scope of review does not require us to disregard the findings of the family court or ignore the fact that the family court was in a better position to assess the credibility of the witnesses.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).  
LAW/ANALYSIS
The family court terminated Smalls parental rights upon finding:  (1) the children lived outside the home for a period of at least six months and Smalls willfully failed to provide support, 2) the children lived in foster care for fifteen of the last twenty-two months, and (3) termination was in the best interests of the children.  Smalls appeals, raising three issues. 
Smalls first argues the family court erred in finding she willfully failed to pay child support.  Smalls contends her failure to pay child support was not willful but due to her loss of employment.  The family court may order termination of parental rights upon a finding of the following:

The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child.  Failure to support means that the parent has failed to make a material contribution to the childs care.  A material contribution consists of either financial contributions according to the parents means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parents means.

S.C. Code Ann. § 20-7-1572(4) (Supp. 2005).  Whether a parents failure to support a child is willful is a question of intent to be determined from all the facts and circumstances in each case.  South Carolina Dept of Soc. Servs. v. Broome, 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992).  The trial judge is given wide discretion in making this determination.  Id.  However, the element of willfulness must be established by clear and convincing evidence.  Id.  Parental conduct which evinces a settled purpose to forego parental duties may fairly be characterized as willful because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent.  South Carolina Dept of Soc. Servs. v. Smith, 343 S.C. 129, 137, 538 S.E.2d 285, 289 (Ct. App. 2000) (quoting Broome, 307 S.C. at 53, 413 S.E.2d at 839).
The family court found Smalls voluntarily left her employment to move to Hartsville, and that she received some money from babysitting.  There is also evidence Smalls received financial support from family members and money from other sources, such as a utility check.  However, Smalls made no child support payments after April 2004.  Furthermore, Smalls has made only sporadic attempts to secure employment to improve her ability to pay child support.  We find support to justify the courts finding that Smalls failure to pay child support constitutes willfulness sufficient to justify termination.  
Smalls next argues the family court erred in terminating parental rights based on the children living outside the home for fifteen of the last twenty-two months because Smalls has not had the opportunity to live with the children since 1994 and it has been DSSs plan to terminate her parental rights since that time.  Our statutory scheme provides a ground for termination of parental rights where the child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months.  S.C. Code Ann. § 20-7-1572(8) (Supp. 2005).  As the children have been in foster care since 1994, there is clear and convincing evidence to support the family courts finding to that effect.  
Finally, Smalls argues the family court erred in finding termination was in the best interest of the children.  We disagree.  Having found at least one ground on which the family court properly terminated Smalls parental rights, we need only determine that termination of Smalls rights is in the best interest of the children.  The interests of the child shall prevail if the childs interests and the parental rights conflict.  South Carolina Dept of Soc. Servs. v. Parker, 336 S.C. 248, 259, 519 S.E.2d 351, 356 (Ct. App. 1999).  Dontravis and Deandre have resided with their foster parents since infancy, for over twelve years.  Both foster families have expressed interest in adoption.  Although the children know their mother, their contact with her has been sporadic and infrequent.  The guardian agreed termination was in the best interest of the children.  We find clear and convincing evidence that termination is in the best interest of the children.
CONCLUSION
For the reasons stated above, the family courts termination of Smalls parental rights as to Dontravis and Deandre is

 AFFIRMED.
 
 GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  For background facts of the removal of the children, refer to South Carolina Department of Social Services v. Smalls, 2000-UP-275 (Ct. App. 2000).