**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Mattie Walls, Carley Jason Walls, Dwayne Anderson,
and Barbara Anderson, Defendants,

Of whom Mattie Walls is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2016-000030

———————

Appeal From Laurens County
Joseph C. Smithdeal, Family Court Judge

———————

Unpublished Opinion No. 2016-UP-483
Submitted October 13, 2016 – Filed November 16, 2016

———————

**AFFIRMED**

———————

Edward S. McCallum, III, of Law Offices of Edward S.
McCallum, III, of Greenwood; and Julius Holman Hines,
of K&L Gates LLP, of Charleston, for Appellant.

Scarlet Bell Moore, of Greenville, for Respondent.

Marcus Wesley Meetze, of the Law Office of Marcus W. Meetze, LLC, of Greenville, for the Guardian ad Litem.

---

**PER CURIAM:** Mattie Walls (Mother) appeals the family court's order terminating her parental rights to her eight month old daughter (Child) and entering her name on the South Carolina Central Registry of Child Abuse and Neglect (Central Registry). On appeal, Mother argues the family court erred by (1) finding clear and convincing evidence supported termination of parental rights (TPR) based upon the ground Child was harmed and due to the severity or repetition of the abuse or neglect, Mother's home could not be made safe within twelve months; (2) ordering Mother's name be added to the Central Registry; (3) refusing to reopen the record to consider testimony from a new expert medical witness; (4) failing to dismiss the South Carolina Department of Social Services' (DSS's) case against Mother when DSS failed to provide her with treatment services; and (5) failing to dismiss DSS's case against Mother when DSS failed to provide proper statutory notice in its petition for TPR. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652. The burden is upon the appellant to convince this court the family court erred in its findings. *Id.*

1. We find the family court properly ordered TPR. Clear and convincing evidence supports TPR on the ground Child was harmed and due to the severity or repetition of the abuse or neglect, Mother's home could not be made safe within twelve months. The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and also finding TPR is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2015). The statutory grounds for TPR must be proven by clear and convincing evidence. *Dep't of Soc. Servs. v. Mrs. H*, 346 S.C. 329, 333, 550 S.E.2d 898, 901 (Ct. App. 2001). "Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. . . . [I]t does not mean clear and unequivocal." *Loe v. Mother*, 382 S.C. 457, 465, 675 S.E.2d 807, 811 (Ct. App. 2009) (quoting *Anonymous (M-156-90) v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 375, 496 S.E.2d 17, 18 (1998)). A statutory ground for TPR exists

when "[t]he child . . . while residing in the parent's domicile has been harmed . . . and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months." S.C. Code Ann. § 63-7-2570(1). "'[H]arm' occurs when the parent . . . inflicts *or allows to be inflicted* upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ." S.C. Code Ann. § 63-7-20(4)(a) (2010) (emphasis added). "'Physical injury' means death or permanent or temporary disfigurement or impairment of any bodily organ or function." S.C. Code Ann. § 63-7-20(18) (2010).

At trial, DSS presented considerable testimony demonstrating Child was harmed when, at just twenty-three days old, she suffered multiple physical injuries. Specifically, a pediatric neurosurgeon who was qualified as an expert in trauma causation testified Child presented with a proximal left femur fracture, a healing classic metaphyseal lesion, bilateral skull fractures, a subdural hematoma, a fracture of the lumbar spine on the L2 vertebra, and blood in her back and abdomen. He opined Child's injuries were not consistent with birth trauma and, significantly, while Child's parents' explanation of Child's father (Father) catching her when she fell from her changing table could be a plausible explanation for Child's broken femur, Child's pattern of widespread injuries indicated nothing other than child abuse. Additionally, a board certified pediatrician specializing in child abuse pediatrics testified she believed the constellation of Child's injuries indicated they were caused by nonaccidental trauma and not by osteogenesis imperfecta (OI) or some other underlying genetic condition. Further, a clinical geneticist testified he believed no evidence existed to support a claim that Child suffered from OI, and he ruled out 95% of OI through genetic testing.[1]

---

[1] In addition to the lack of indicators or markers suggesting that Child suffered from OI, Child did not suffer any fractures during the several months preceding the TPR hearing. The genetics expert explained that if Child had one of the rarer forms of OI, one would expect to see continuing fractures, bone thinning, and other bone abnormalities. Child's x-rays did not reflect any such bone issues. This is so despite the fact that while Father was changing Child's diaper during a supervised visit with Mother and Father, Child fell from a sofa onto a tile-covered concrete floor.

Additionally, we find TPR is in Child's best interest.[2] "In a TPR case, the best interest of the child is the paramount consideration." *S.C. Dep't of Soc. Servs. v. Williams,* 412 S.C. 458, 469, 772 S.E.2d 279, 285 (Ct. App. 2015). "The interests of the child shall prevail if the child's interest and the parental rights conflict." S.C. Code Ann. § 63-7-2620 (2010).

Child's DSS foster care worker (Foster Care Worker) and guardian ad litem (GAL) testified Mother had a bond with Child and Child enjoyed visits with her parents. Foster Care Worker stated Mother was in the top 10% of parents as far as the effort she expended to try and maintain a relationship with Child while she was in DSS custody. Specifically, Foster Care Worker explained Mother offered to pay child support on multiple occasions; Mother brought clothing, toys, shoes, and other items for Child; and Mother regularly visited Child. However, Foster Care Worker and GAL expressed concerns that reunification would not be possible without a plausible explanation to account for Child's injuries. Foster Care Worker further stated that in the case of nonaccidental trauma, she was not sure what could be done to make Mother's home safe. Foster Care Worker averred that while Child was not in preadoptive placement at the time of the hearing, DSS actively sought an adoptive resource for her. While we acknowledge Mother's considerable efforts to try and remain an active part of Child's life while Child remained in DSS custody, given the severity of Child's injuries and Mother's inability to offer a plausible explanation for those injuries, we find TPR is in Child's best interest and will allow her to establish permanency outside of the foster care system. *See* S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of this article is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life.").

2. We find the family court did not err in placing Mother's name on the Central Registry. "At a hearing pursuant to [s]ection . . . 63-7-1660, at which the [family]

---

[2] Though Mother failed to address Child's best interest in her brief, we address it because this matter affects the rights of a minor child. *See Galloway v. Galloway,* 249 S.C. 157, 160, 153 S.E.2d 326, 327 (1967) ("The duty to protect the rights of minors has precedence over procedural rules otherwise limiting the scope of review[,] and matters affecting the rights of minors can be considered by [appellate courts] [e]x mero motu.").

court orders that a child be taken or retained in custody or finds that the child was abused or neglected, the [family] court . . . *shall* order, without the possibility of waiver by the department, that a person's name be entered in the [Central Registry] if the [family] court finds that there is a preponderance of the evidence that the person . . . physically abused the child . . . [or] wilfully or recklessly neglected the child . . . ." S.C. Code Ann. § 63-7-1940(A)(1)(a), (c) (Supp. 2015) (emphasis added). "'Preponderance of the evidence' means evidence which, when fairly considered, is more convincing as to its truth than the evidence in opposition." S.C. Code Ann. § 63-7-20(19) (2010). The family court found by clear and convincing evidence Child was harmed by one or both her parents during the first twenty-three days of her life. Given the family court's determination Child was harmed, we find the family court was statutorily required to order Mother's name be added to the Central Registry.

3. We find the family court did not err when it declined to reopen the record pursuant to Rule 59(a)(2), SCRCP, to consider additional expert testimony because the evidence Mother sought to introduce could have been discovered before trial. By Mother's own admission, she had secured another expert witness prior to trial who was prepared to testify regarding the possibility Child suffered from metabolic bone disorder. Therefore, we find Mother had notice evidence of metabolic bone disorder might exist and she could have secured that evidence prior to trial or sought a continuance of proceedings until that evidence could have been presented at trial. *See Spreeuw v. Baker*, 385 S.C. 45, 62-63, 682 S.E.2d 843, 852 (Ct. App. 2009) (stating in order to obtain relief based upon newly discovered evidence the moving party must show the evidence "has been discovered since the trial" and "could not have been discovered before the trial").

4. We find the family court did not err in denying Mother's motion to dismiss DSS's case on the basis that DSS failed to offer Mother treatment services. "It is the purpose of this chapter to . . . establish an effective system of services throughout the [s]tate to safeguard the well-being and development of endangered children and to preserve and stabilize family life, *whenever appropriate* . . . ." S.C. Code Ann. § 63-7-10(B)(2) (2010) (emphasis added). Here, we find DSS was statutorily required to pursue TPR. *See* S.C. Code Ann. § 63-7-1660(B)(2) (Supp. 2015) (providing the removal petition "must include a petition for [TPR] if . . . evidence indicate[s] the existence of one or more of the conditions set forth in [s]ection 63-7-1640(C)(1) through (8) [of the South Carolina Code (Supp. 2015)], unless there are compelling reasons for believing [TPR]" would not be in the child's best interest); S.C. Code Ann. § 63-7-1640(C)(1)(a), (b) (providing the family court can authorize DSS to forego reasonable efforts at reunification when

"the parent has subjected the child" to aggravated severe or repeated abuse or neglect).  However, had the family court determined clear and convincing evidence did not support TPR based upon severe or repetitious harm, it would have been statutorily required to order DSS to provide Mother with treatment services.  *See* S.C. Code Ann. § 63-7-1670(A) (2010) ("At the close of a hearing pursuant to [s]ection 63-7-1650 or 63-7-1660 and upon a finding that the child shall remain in the home and that protective service shall continue, the family court shall review and approve a treatment plan designed to alleviate any danger to child and to aid the parents so that the child will not be endangered in the future.").  Thus, under these facts, we find DSS's failure to offer treatment services did not warrant dismissal.

5.  We find the family court did not err in denying Mother's motion to dismiss this case based upon DSS's failure to include a statutorily-required notice provision in the TPR complaint.  Pursuant to section 63-7-1660(C)(2) of the South Carolina Code (2010), a TPR complaint "shall state: 'As a result of this hearing, you could lose your rights as a parent.'"  However, the TPR complaint here included the statutorily-required notice provision for a removal complaint, which requires a removal complaint to "state: 'At this hearing the court may order a treatment plan. If you fail to comply with the plan, you could lose your rights as a parent.'"  S.C. Code Ann. § 63-7-1660(C)(3) (2010).  Although the TPR complaint did not include the correct notice provision, it put Mother on notice she "could lose [her] rights as a parent."  Further, the TPR complaint complied with the requirements for a TPR complaint as set forth in section 63-7-2540 of the South Carolina Code (2010), included the grounds on which DSS sought TPR, and contained an explanation of the facts that supported TPR.  Accordingly, we find Mother was on notice that DSS sought TPR and was therefore not prejudiced by DSS's failure to include the correct notice provision.

Because Mother was not prejudiced by DSS's failure to include the statutorily-required notice provision, we disagree with Mother's contention that DSS's failure to strictly comply with section 63-7-1660(C)(2) warrants dismissal of DSS's amended complaint.  Although DSS should make all efforts to comply with the statutory requirements for a TPR petition, including the notice requirement codified in section 63-7-1660(C)(2), the General Assembly prescribed no remedy for DSS's failure to include the notice mandated by section 63-7-1660(C)(2) in its petition.  Our finding that DSS's failure to include the proper notice provision does not warrant dismissal in this case comports with the statutory policy of "liberally constru[ing] [TPR statutes] in order to ensure prompt judicial procedures for

freeing minor children from the custody and control of their parents." S.C. Code Ann. § 63-7-2620 (2010).

**AFFIRMED.**[3]

**LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.