578 S.E.2d 733

**Jane DOE, Respondent,**

**v.**

**BABY BOY ROE, a minor under the age of fourteen (14) years, South Carolina Department of Social Services, Eric Stern and Patsy Jordan, Defendants,**

**Of whom Patsy JORDAN is, Appellant.**

**No. 3606.**

Court of Appeals of South Carolina.

Heard Jan. 13, 2003.

Decided March 10, 2003.

Rehearing Denied April 17, 2003.

---

Thomas L. Bruce, of Greenville, for Appellant.

Robert D. Moseley, Jr., of Greenville, for Respondent.

Frances E. Duarte, of Greenville, for Guardian Ad Litem.

HEARN, C.J.:

Patsy Jordan (Mother) appeals from a family court order terminating her parental rights to minor child, Baby Boy Roe, and granting his adoption to Roe's foster mother, Jane Doe. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On November 17, 1998, Mother gave birth to Roe, who had illegal drugs in his system.[1] The next day, following the South Carolina Department of Social Services' (DSS) assessment that Mother posed a "high risk" of causing harm or physical abuse to Roe, DSS and Mother entered into a safety plan in which she agreed to seek substance abuse treatment. Eight days after Roe's birth, DSS placed him in protective custody. Roe remained hospitalized until placed in a foster home on December 8, 1998.

At the time of Roe's birth, Mother was on probation for drug and shoplifting offenses. By giving birth to a drug-addicted baby, Mother violated her probation, so she was incarcerated from November 1998 until July 1999.

In May 1999, the family court, operating under the assumption Mother had been released from jail, ordered Mother to pay monetary support to Roe. However, a second family court order was issued, dismissing Mother's child support obligation and noting Mother was "still in jail when that order was signed." The family court also ordered Mother to undergo drug and alcohol counseling and attend parenting classes.

---

1. Mother also gave birth to a drug-addicted baby in 1992.

When Mother was released from jail in July, she took very few steps toward regaining custody of Roe. Although she did visit Roe, she failed to attend both the recommended outpatient drug treatment program and parenting classes. By October, Mother was incarcerated again for her tenth shoplifting offense.

Once Mother was released from prison in January 2000, she immediately went into a drug addiction recovery program and began to turn her life around. Mother completed a six-week parenting class in May 2000, and in June, after the family court ordered Mother to pay child support for Roe, she began making payments.

Doe initiated this action to terminate Roe's parents' parental rights on July 21, 2000. Doe also sought to adopt Roe.

The family court terminated Mother's rights based on the child remaining in foster care for fifteen of the last twenty-two months and based on grounds of abandonment, failure to rehabilitate, failure to support, failure to visit, and diagnosable condition. The court also approved Doe's adoption of Roe, concluding the adoption was in Roe's best interests. Mother appeals, arguing that no ground existed to support the termination of her parental rights and that termination was not in Roe's best interests.

## STANDARD OF REVIEW

In a termination of parental rights (TPR) case, the best interests of the children are the paramount consideration. *South Carolina Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct.App.2000). Grounds for TPR must be proved by clear and convincing evidence. *Hooper v. Rockwell*, 334 S.C. 281, 297, 513 S.E.2d 358, 366 (1999); *see also Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

Furthermore, in a TPR case, the appellate court has jurisdiction to examine the entire record to determine the facts according to its view of the evidence. *Richland County*

*Dep't of Soc. Servs. v. Earles,* 330 S.C. 24, 32, 496 S.E.2d 864, 866 (1998). This court may review the record and make its own findings whether clear and convincing evidence supports termination. *South Carolina Dep't of Soc. Servs. v. Parker,* 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct.App.1999). However, our broad scope of review does not require us to disregard the findings below or ignore the fact the trial judge was in a better position to assess the credibility of the witnesses. *Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996).

## *LAW/ANALYSIS*

Under South Carolina's TPR Statute, "[t]he family court may order the termination of parental rights upon a finding of **one or more** of the [listed] grounds and a finding that termination is in the best interest of the child." S.C.Code § 20–7–1572 (2001) (emphasis added). Thus, to terminate parental rights under section 20–7–1572, the family court must first find at least one of the statutory grounds set forth in that section. If the family court finds that a statutory ground for termination has been proven, it must then find that the best interests of the child would be served by termination. *Id.*

### I. Grounds for Terminating Mother's Parental Rights

■ One ground for terminating a parent's rights under section 20–7–1572 is that the child has lived in foster care for fifteen out of the most recent twenty-two months. In this case, Roe had been in emergency protective custody and foster care since he was eight days old. At the time his foster mother sought to terminate his parents' rights, Roe was twenty-months old. Mother argues that because twenty-two months had not expired, her rights cannot be terminated on this ground. We disagree.

■ When construing a statute, courts should consider the words of the statute in conjunction with the purpose of the whole statute and the policy of the law. *South Carolina Dep't of Soc. Servs. v. Gamble,* 337 S.C. 428, 523 S.E.2d 477 (Ct.App. 1999). The stated purpose of South Carolina's TPR statute "is to establish procedures for the reasonable and compassionate termination of parental rights where children are abused,

neglected, or abandoned in order to protect the health and welfare of such children and make them eligible for adoption...." S.C.Code Ann. § 20–7–1560 (1976). Furthermore, case law tells us that TPR statutes must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship. *Joiner ex. rel. Rivas v. Rivas*, 342 S.C. 102, 108, 536 S.E.2d 372, 375 (2000); *South Carolina Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 519 S.E.2d 351 (Ct.App.1999).

With the purpose of the TPR statute in mind, we find that once a child has been in foster care for fifteen months, whether those months are consecutive or within the last twenty-two months, the parental rights of that child's parents may be terminated upon a showing that termination is in the child's best interests. We believe the legislature included the "within the most recent twenty-two months" language in order to account for children who bounce between a foster home and their parents' home. The language indicates that children need not have been in foster care for fifteen consecutive months before their parents' rights can be terminated, but rather, a ground for termination exists once a child has languished in foster care for **any** fifteen months within the most recent twenty-two-month period.

Here, the fact that Roe was in foster care for the last twenty months is undisputed. Thus, we find the trial court did not err in finding a statutory ground supporting the termination of Mother's parental rights.

## II.  Roe's Best Interests

■ Having found one ground on which the family court properly terminated Mother's parental rights, we need only determine that termination of Mother's rights is in Roe's best interests to affirm the family court's termination. See S.C.Code § 20–7–1572. Although we applaud Mother for completing drug rehabilitation and for turning her life around, we believe that Roe's interests would be best served by terminating Mother's rights. *See e.g., South Carolina Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 258–259, 519 S.E.2d 351,

582

356 (Ct.App.1999) ("The interests of the child shall prevail if the child's interests and the parental rights conflict.").

From the time that Roe was released from the hospital, he resided with Doe, and at the time of the hearing, he was just under twenty-nine months old. DSS professionals testified about the bonds he formed with Doe, as well as the quality of home-life provided by Doe. A behavioral pediatrician testified about the detrimental effect separating Roe and Doe would have on Roe. Additionally, Doe testified about her relationship with Roe and her ability to provide a nurturing, safe, and comfortable home for him. Thus, we find ample evidence in the record to support the family court's termination of Mother's parental rights.

## CONCLUSION

For the forgoing reasons, the decision of the circuit court is **AFFIRMED.**

CURETON and ANDERSON, JJ., concur.