598 S.E.2d 303

## SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,

v.

Jacqueline D. SIMS; Stanley S. Bates; Maurice Lucas; Eugene Kinard; John Doe I.; John Doe II.; John Doe III.; Mark Sims, a minor child born August 30, 1984; Heather Sims, a minor child born January 21, 1986, and Demarios Sims, a minor child born June 20, 1991, Defendants,

of whom Jacqueline Sims is the Appellant.

No. 3824.

Court of Appeals of South Carolina.

Submitted May 12, 2004.

Decided June 14, 2004.

Leroy Ellis Davis, of Columbia, for Appellant.

Bryan Christopher Able, of Laurens, for Respondent.

HEARN, C.J.:

Jacqueline D. Sims appeals a family court order terminating her parental rights to her two minor children.[1]  Sims argues

---

1.  Sims's oldest child was seventeen at the time of the commencement of this action.  Because he was so close to emancipation, DSS chose not

the order was not supported by clear and convincing evidence. We affirm.[2]

## FACTS

Sims is the biological mother of three children who, at the time of the initial action, were minors. All three have different fathers, none of whom played an active role in the children's lives. Sims has raised the children with no financial help from the respective fathers. She is unemployed and relies on a support check of about $500 per month as her sole source of income.

The South Carolina Department of Social Services ("DSS") first became involved with Sims and her family sometime in 1993. In 1998, inspection of the family residence revealed several holes in the home's floor and generally squalid conditions. The children were removed from the home at that time and placed into emergency protective custody by law enforcement. At the merits hearing, the family court found that Sims physically neglected the children because of the deplorable conditions of the home. Additionally, Sims was criminally prosecuted for child endangerment and, as a consequence, spent a short time in jail. Upon release, she entered a treatment program with DSS with the hopes of regaining custody of the children. The treatment program was incorporated into the removal order and required Sims find stable and adequate housing and maintain adequate living conditions for the children. The order specifically required Sims to maintain running water, a clean environment, utilities, electricity, and a supply of proper food and clothing. The order prohibited Sims from sharing her home with members of her extended family. Sims was also ordered to attend parenting classes and vocational rehabilitation. This removal order was not appealed.

---

to include him in this case. Furthermore, Sims's next oldest child is now eighteen and thus no longer a minor. Therefore, this appeal concerns only Sims's parental rights to her youngest son, Demarius, who is now twelve years old.

2. We affirm this case without oral argument pursuant to Rule 215, SCACR.

DSS filed a complaint for the termination of Sims's parental rights to her two youngest children and a hearing was held on January 9, 2002. A DSS caseworker testified that Sims successfully completed the parenting and vocational training classes required by the DSS treatment plan. However, the caseworker stated that Sims has had seven different residences since the removal of her children and that in all seven residences, Sims resided with other family members. The caseworker visited her at three of the seven homes. During a 1999 visit to a residence Sims shared with her mother, the caseworker found the home to be severely unkempt. There was little food in the house, the floors and sink were very cluttered, and the residents appeared to use a bucket for a toilet. At Sims's next confirmed residence, the caseworker observed a slight improvement, but continued to find Sims's living conditions to be unsatisfactory due to clutter. The caseworker visited Sims's most current residence, accompanied by the guardian ad litem, just one day prior to Sims's termination of parental rights (TPR) hearing. As in previous visits, the caseworker found this home to be in a "deplorable state." The house was cluttered with trash and what appeared to be stuffing from an old chair. Dirty dishes and bags of beer cans were strewn about the kitchen. The caseworker testified that the back room of the house where the children were staying emitted a strange odor. The guardian stated that sheets and floors were filthy and the entire house smelled like urine. Another DSS caseworker, who was assigned to Sims's twenty-three year old son, also a resident of the home, visited the residence regularly and testified that these conditions accurately represented the habitual state of the home.

Sims testified that she had taken every action possible to comply with the treatment program since the removal of her children. She stated that she completed the parenting classes and improved her personal hygiene. Further, Sims testified that she attempted to comply with the adequate housing requirement of the removal order but could not afford a place of her own. Sims also offered the testimony of two family friends, who testified to her parenting and housekeeping skills.

The family court terminated Sims's rights to her two youngest children finding that Sims had failed to remedy the conditions that caused their removal. The court also found Sims had physically neglected the children as defined in section 20–7–490 of the South Carolina Code and, because of the repetition of neglect, it was not likely the situation could be remedied within twelve months. Alternatively, the family court terminated Sims's parental rights because her children had been in foster care for fifteen of the last twenty-two months. Sims appeals.

## STANDARD OF REVIEW

In a TPR case, the paramount consideration is the best interests of the children. *See Doe v. Baby Boy Roe,* 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct.App.2003), *cert. denied* (April 8, 2004). Grounds for TPR must be proved by clear and convincing evidence. *Hooper v. Rockwell,* 334 S.C. 281, 296, 513 S.E.2d 358, 366 (1999); *see also Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

In a TPR case, the appellate court may review the record and make its own findings of whether clear and convincing evidence supports termination. *South Carolina Dep't of Soc. Servs. v. Parker,* 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct.App.1999). However, our broad scope of review does not require us to disregard the findings below or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses. *Dorchester County Dep't of Soc. Servs. v. Miller,* 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996).

## LAW/ANALYSIS

Sims argues the family court erred in granting TPR because DSS failed to prove the statutory grounds for the

termination of parental rights by clear and convincing evidence. Sims asserts that her living situation (i.e. the actual unkempt state of her residence and the fact that it was shared with other family members) could have been remedied within twelve months, and therefore no ground for termination was proven by clear and convincing evidence. We disagree.[3]

Section 20–7–1572 of the South Carolina Code (Supp.2003) outlines the grounds upon which, if coupled with a finding that the decision is in the best interest of the child, the parental rights of a mother or father may be terminated. Here, the family court, in addition to finding termination to be in the best interest of the children, specifically found the following statutory grounds applied to Sims and children:

> (1) The child or another child in the home has been harmed as defined in Section 20–7–490,[4] and because of the severity or repetition of the abuse or neglect, it is not reasonably

[3]. We note that Sims, upon whom the burden of presenting a sufficient record for review rests, failed to include the family court's TPR order in the record on appeal. *See Harkins v. Greenville County,* 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (affirming the circuit court on one issue because Appellant had not met its burden of presenting an adequate record on appeal). This omission alone could justify a finding that the issues of this appeal are not preserved for our review. *See York v. Conway Ford, Inc.,* 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) ("The record should include the ruling on appeal."); *Polson v. Burr,* 235 S.C. 216, 218–219, 110 S.E.2d 855, 856 (1959) (refusing to decide the merits of an appeal due to the failure to incorporate in the record the order from which the appeal was taken); Rule 210(h), SCACR ("[T]he appellate court will not consider any fact which does not appear in the Record on Appeal."). Additionally, we could find Sims's issues on appeal abandoned due to their conclusory nature and lack of supporting authority. *See Glasscock, Inc. v. U.S. Fidelity and Guar. Co.,* 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). However, due to the magnitude and consequence of a TPR and because a copy of the family court's order was located in this court's case file, we have proceeded to the merits of this appeal. *See Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) ("[P]rocedural rules are subservient to the court's duty to zealously guard the rights of minors.").

[4]. " 'Child abuse or neglect' or 'harm' occurs when the parent … (c) fails to supply the child with adequate food, clothing, shelter, or education." S.C.Code Ann. § 20–7–490(2) (Supp.2003).

likely that the home can be made safe within twelve months. In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child in the home may be considered.

(2) The child has been removed from the parent ..., has been out of the home for a period of six months following the adoption of a placement plan ..., and the parent has not remedied the conditions which caused the removal.

(8) The child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months.

S.C.Code Ann. § 20–7–1572 (Supp.2003).

We find there is clear and convincing evidence in the record to terminate Sims's parental rights based solely on physical neglect of the children and the unlikelihood that the home could be made safe within twelve months under section 20–7–1572(1). As determined by the family court at the time of the children's removal, the children suffered harm as defined by section 20–7–490 because Sims failed to supply them with adequate shelter. Since this finding of harm, Sims has not acquired adequate housing for the children as required by the order. She has lived in seven different residences and evidence was presented by DSS that three of these homes, including Sims's residence at the time of the TPR hearing, were inadequate for children. Sims presented no tangible evidence of any future plans to acquire stable and adequate housing.

Section 20–7–1572(1) does not require the family court to find that improvement of the home within twelve months is impossible, but rather that such improvement is not reasonably likely. Because Sims's inadequate living conditions have continued since the children's removal, the family court acted within its authority in finding Sims's home was not reasonably likely to be made safe within twelve months. As such, there is clear and convincing evidence to support the family court's finding under section 20–7–1572(1) that the children had been harmed and that it was not likely the home would be safe within twelve months.

Furthermore, under section 20–7–1572(2), it is undisputed that at the time of the TPR hearing the children had been removed from the care of Sims and placed under the responsibility of the State for over two years. As discussed above, Sims failed to provide adequate and stable living arrangements for the children during this time and thus, did not remedy the conditions that caused the children's removal. Therefore, we find TPR pursuant to section 20–7–1572(2) was supported by clear and convincing evidence.

Additionally, Sims does not appeal the family court's finding that the children have been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months pursuant to section 20–7–1572(8). A finding pursuant to section 20–7–1572(8) alone is sufficient to support a termination of parental rights. *See Baby Boy Roe*, 353 S.C. at 580–81, 578 S.E.2d at 735–36.

■ Finally, we agree with the family court's ruling that termination of Sims's parental rights is in the best interest of the children. As stated above, clear and convincing evidence was presented that Sims failed to maintain adequate living conditions for her children. The guardian ad litem testified that prior to their placement in foster care, the children lacked personal hygiene skills. The guardian explained that since their placement in foster care, their personal hygiene has improved and they have learned how to bathe and care for themselves. Further, the guardian stated that the children have made great progress since their placement in foster care and recommended termination of Sims's parental rights.

Because we find clear and convincing evidence to support the grounds for terminating Sims's rights and termination of her rights is in the best interests of the children, the TPR order of the family court is

**AFFIRMED.**

STILWELL and CURETON, JJ., concur.