THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Steve Hurley and Julie Hurley, Respondents,
v.
April Main, Keith Haynes, John Doe (Unknown Father), and Dorchester County Department of Social Services, Defendants, of whom April Main is,
Appellant.
In Re:  Anya Haynes and Azariah Haynes, minors under the age of eighteen (18) years.
 
 
 

Appeal From Dorchester County
 Anne Gue Jones, Family Court Judge

Unpublished Opinion No.  2006-UP-056
Submitted January 3, 2006  Filed January 25, 2006

AFFIRMED

 
 
 
Gina J. McAlhany, of Summerville, for Appellant.
James B. Richardson, Jr., of Columbia, for Respondents.
 
 
 

PER CURIAM: April Main (Mother) appeals from an order of the family court terminating her parental rights over her twin daughters, Anya and Azariah Haynes.  We affirm.[1]
FACTS
In November of 2001, while pregnant with twins, Mother went to the hospital because she was experiencing labor pains.  She tested positive for cocaine.  However, when the twins were born on December 13, 2001, neither of them tested positive for drugs.  DSS allowed mother to keep custody of the children, but required her to go to New Life, an inpatient treatment facility for drug addicts.  Mother was unsuccessfully discharged in February of 2002, and the twins were placed in the custody of Steve and Judy Hurley on February 26, 2002, when they were two-and-a-half months old.[2]  
Tonya McCants, the foster care caseworker assigned to Mothers case, testified that Mother was discharged from New Life after testing positive for drugs; however according to the discharge summary, Mother was discharged for arguing with staff.  McCants also testified at one point that the children were born addicted to drugs, then corrected herself and said Mother tested positive for drugs when the twins were born.  However, McCants had no documentation to support that allegation, and she could not explain why DSS would have waited until February 26, 2002 to take custody of the children if Mother had tested positive for drugs at the childrens birth in December.  
At the time Mother was discharged from New Life, she was also on probation, a condition of which required her to successfully complete inpatient drug treatment.  Because her discharge was a violation of probation, Mother was incarcerated.  
A hearing on the merits of the twins removal was held in March of 2001, and at that hearing, Mother and DSS agreed to a treatment plan.  Pursuant to the plan, Mother was required to complete a drug abuse counseling program; remain drug free; and upon her release from prison, seek stable housing and employment. 
While incarcerated, Mother enrolled in and completed drug treatment; she also completed a parenting class and participated in an educational skills class through which she received a certificate in keyboarding.  In addition to taking these classes, Mother sent letters to the twins, and DSS transported the twins to visit with Mother on at least seven occasions.  However, once DSS learned Mother would not be released from prison until fall of 2004, at the earliest, it recommended Mothers rights be terminated, and soon after that recommendation, visitation between Mother and the twins ceased.  
During her incarceration, Mother never sent money to the twins, though in April of 2002, she wrote a letter to DSS explaining that she had received a $1,100 tax refund and wanted to know how to send the money to her daughters.  DSS received the letter, but McCants testified she d[id] not think she ever responded to it.  When Mother testified, she was asked extensively about how she spent the $1,100.  Mothers answers were evasive, and she could not even recollect whether she had purchased anything in the prison canteen over the past year.  
Mother testified that once she is released, she plans to live with the twins in a halfway house called Step Ahead.  She explained that they would live there for three to six months until she was able to find permanent housing.  However, Mother admitted she had not yet been accepted into the Step Ahead program, though she and her counselor were working on it.  
The twins have thrived in their current placement with the Hurleys, who have four other adopted children.  By all accounts, the Hurleys provide a loving household and have the financial resources to continue to care for the twins throughout their lives.[3]   
The Hurleys filed a complaint in family court seeking to terminate Mothers parental rights to the twins on the grounds of the twins having languished in foster care for fifteen out of the last twenty-two months, Mothers failure to remedy conditions, Mothers diagnosable condition of substance abuse, and Mothers failure to support.  The Hurleys also sought to adopt the twins.
The family court found the twins had been in foster care for fifteen out of the last twenty-two months, Mother had failed to support the twins for a period of six months, and Mother had failed to remedy conditions.  Based on these grounds and after finding termination was in the twins best interests, the family court terminated Mothers parental rights and granted the Hurleys petition for adoption. This appeal followed.
STANDARD OF REVIEW
 [I]n a TPR case, the appellate court has jurisdiction to examine the entire record to determine facts in accordance with its own view of the evidence.  Doe v. Baby Boy Roe, 353 S.C. 576, 579-80, 578 S.E.2d 733, 735 (Ct. App. 2003) (citing Richland County Dept of Soc. Servs. v. Earles, 330 S.C. 24, 32, 496 S.E.2d 864, 866 (1998)).  In determining whether to terminate parental rights, the grounds for TPR must be proved by clear and convincing evidence and the best interest of the child is the paramount consideration.  Id. at 579, 578 S.E.2d at 735.  The appellate court may review the record and make its own findings as to whether clear and convincing evidence supports the TPR.  Id. (citing S.C. Dept of Soc. Servs. v. Parker, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999)).  However, this broad scope of review does not require us to disregard the findings of the trial court or to ignore the fact that the court was in a better position to assess the credibility of witnesses.  Id. at 580, 578 S.E.2d at 735 (citing Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996)).
LAW/ANALYSIS
Mother first argues the family court erred in terminating her parental rights based on the grounds of failure to support and failure to remedy conditions.  However, she does not appeal from the family courts finding that the twins were in foster care for fifteen of the last twenty-two months. That unappealed ground alone is sufficient to terminate Mothers parental rights so long as termination is in the twins best interests.  See S.C. Dept. of Soc. Servs. v. Sims, 359 S.C. 601, 598 S.E.2d 303 (Ct. App. 2004); Doe v. Baby Boy Roe, 353 S.C. 576, 578 S.E.2d 733 (Ct. App. 2003) (finding that the ground of fifteen out of the last twenty-two months alone was sufficient to terminate Mothers parental rights when termination was in childs best interest).  Thus, we need not address whether there was sufficient evidence to support termination on the grounds of failure to remedy conditions and failure to support.
Mother next argues the family court erred in finding termination to be in the twins best interests.  We disagree.
At the time of the termination of parental rights hearing, the twins were two-and-a-half years old, and Mother had been incarcerated since they were just over two months old.  Though they have visited with Mother on seven occasions, the Hurleys have been the only parents the twins have ever known.  By everyones account, the twins have thrived while living with the Hurleys, and the Hurleys home is a loving and stable environment.  
Mother, on the other hand, has a history of failing to parent her children.  Furthermore, although we commend Mother for completing drug treatment while in prison, we are concerned about her ability to remain drug-free upon her release.  According to Mothers own testimony, she successfully completed drug treatment in 1993, but was unable to stay clean. As the record shows, Mother did not even cease from drug-use while pregnant with the twins. Moreover, it is unclear where Mother will live upon her release from prison or what Mother will do to support herself and the twins.
Based on these circumstances, we find no error in the family courts termination of Mothers parental rights.  See S.C. Code Ann. § 20-7-1572 (Supp. 2004) (The family court may order the termination of parental rights upon a finding of one or more of the following grounds and a finding that termination is in the best interest of the child . . . .). Accordingly, the order of the family court is:
 AFFIRMED.
HEARN, C.J., and ANDERSON and KITTREDGE, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Mother has given birth to five other children in addition to the twins; however, none remain in Mothers custody.  The maternal grandmother adopted Mothers oldest child; Mothers second oldest child was privately adopted; Mothers parental rights to her third child were terminated in Florida; Mother consented to the adoption of her fourth child after DSS became involved; and Mothers fifth child lives with relatives of the father.  
[3]  In fact, the Hurleys have been named Adoptive Family of the Year and Outstanding Volunteer Foster Parents of the Year.