THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Department of Social Services, Respondent,
v.
Mother, Father, and Minor Children under the age of eighteen (18):  Child A, born 01.18.1993, Child B, born 02.12.1996, Child C, born 10.02.1997, and Child D, born 11.29.1999, Defendants, Of Whom Father is the
Appellant.
 
 
 

Appeal From Spartanburg County
 James F. Fraley, Jr., Family Court Judge

Unpublished Opinion No. 2006-UP-268
Heard May 17, 2006  Filed June 1, 2006

AFFIRMED

 
 
 
Andrea  Hawkins, of Spartanburg, for Appellant.
Kenneth Philip Shabel, of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  This is an appeal of a termination of parental rights.  Father argues termination was improper because he remedied the conditions that caused the removal of his children and because there was no evidence that he posed a threat of harm to them.  We affirm.
FACTS
Father and Mother married in 1991.  They have four daughters, who at the time of the final hearing on August 10, 2005, ranged in age from five to twelve. 
The Department of Social Services (DSS) first became involved with the family after receiving a report on October 24, 1997, that Mother and Child C both tested positive for cocaine at the childs birth.  Although the family court initially found probable cause for taking the children into protective custody, the parties agreed at the final hearing on November 24, 1997, that (1) Father would receive legal and physical custody of the children; (2) Mother would be restrained from having unsupervised contact with the children pending her completion of counseling for drug abuse; (3) Father would be restrained from allowing unsupervised contact between Mother and the children until she completed treatment; and (4) both parents would cooperate with DSS in completing treatment.  At a subsequent judicial review hearing on March 16, 1998, the family court granted legal and physical custody of the children to both parents.
DSS took the children into emergency protective custody a second time in November 1998, after an allegation of criminal domestic violence.  The charges were later dismissed, and by consent order the children were later returned to both Father and Mother.
In October 1999, Mother tested positive for cocaine during the final trimester of her pregnancy with the familys fourth child, prompting DSS to take the other three children into protective custody a third time.  At the probable cause hearing, the family court found probable cause for the removal due to Mothers positive drug test; however, following the merits hearing on December 13, 1999, Father, with DSSs consent, received custody of all four children on the condition that he prevent Mother from having unsupervised contact with the children. 
The day after the merits hearing, Father and Mothers newborn fourth daughter tested positive for cocaine.  Following an emergency hearing on January 20, 2000, the family court left the prior custody arrangement intact, with Father having legal custody of the children and Mother having only supervised contact with them.  Following a judicial review hearing on December 11, 2000, the family court lifted the ban on unsupervised contact between Mother and the children and allowed DSS and the guardian ad litem to close their files on the case. 
In July 2002, DSS brought an intervention action alleging Mother had physically abused the children by using excessive corporal punishment.  On October 11, 2002, while that action was pending, DSS took emergency protective custody of the children and filed a complaint for removal, alleging additional bruises on the children.  After the removal, both parents and two of the children tested positive for cocaine.  
At a hearing on October 21, 2002, the family court consolidated the intervention action with the removal case.  This time the family court granted custody of the children to DSS; however, it also ordered DSS to perform an expedited homestudy on Father for possible return of the children to his custody upon confirmation that he is no longer living with [Mother]. 
Following a permanency planning hearing on March 7, 2003, the family court returned the children to Father.  The family court permitted Mother to live in the home with Father and the children; however, it also ordered to her comply with previous court-ordered treatment and submit to random drug screenings.  In addition, Mothers contact with the children was to be supervised until she completed two clean-hair-strand drug tests.  
In September 2003, DSS brought a rule to show cause against Mother.  The family court ordered her to immediately submit to a drug screen.  The test, which was administered September 19, 2003, was positive for cocaine.  The other family members were also tested.  All four children tested positive for cocaine, with only Father having a negative screen.  The children were again removed from their home and have remained in the physical and legal custody of DSS since that time.
At a hearing on January 5, 2004, DSS agreed not to pursue termination of parental rights, proceeding only on its complaint for removal.  With all parties consent, the family court adopted a treatment plan, which both Father and Mother agreed to complete without assistance, financial or otherwise, from
DSS. 
At a permanency planning hearing on September 9, 2004, the family court found both parents had made some, but not substantial progress on their previously ordered treatment plan and allowed DSS to re-institute an action for termination. 
On September 23, 2004, Father filed an action for divorce against Mother on the ground of habitual drunkenness.  At a temporary hearing on November 3, 2004, the family court granted Father exclusive use and possession of the marital home and ordered Mother to vacate the residence by November 20, 2004.[1] 
On November 15, 2004, DSS filed a complaint for termination of parental rights against both Father and Mother.  Several months later, the family court granted Father  a divorce on the ground of Mothers habitual drunkenness. 
The final hearing in the termination action took place August 10, 2005.  By order dated September 7, 2005, the family court terminated the parental rights of both Father and Mother.  Only Father appeals.
STANDARD OF REVIEW
The best interest of the child is the paramount consideration in a termination of parental rights case.[2]  The party seeking to terminate anothers parental rights must prove the alleged grounds for termination by clear and convincing evidence.[3]  Although this court may review the record and make its own determination whether the grounds for termination are supported by clear and convincing evidence,[4] . . . it should not necessarily disregard the findings of the family court because the family court is in a better position to evaluate the credibility of the witnesses and assign weight to their testimony.[5]
LAW/ANALYSIS
1.  Father argues on appeal that termination of his parental rights was improper because he remedied the conditions leading to the removal of the children and because there was no evidence that he posed any threat of harm to them.  We disagree with these assertions.
The family court concluded there was clear and convincing evidence to terminate the parental rights of both parents, noting it [was] not reasonably likely that the home [could] be made safe within twelve months.[6]  In support of this determination, the family court made numerous findings of fact.  Particularly significant is the family courts finding that both Father and Mother made no significant progress on providing [a] safe home for the children.  In so finding, the family court noted (1) there was still domestic violence in the home, although conceding it was unclear as to who was a fault; (2) neither parent completed the counseling sessions as required by previous court order; and (3) neither parent substantially complied with the treatment plan, although acknowledging Father came close.
As to the allegation of domestic violence, Father argues he was never convicted of criminal domestic violence and there was evidence in the record that Mother had falsely accused him of domestic violence in the past and was herself a volatile person.  Nevertheless, there was significant circumstantial evidence presented at trial suggesting that Father, despite a clean criminal record and Mothers instability, had been an abuser.  This evidence included (1) a diagnosis from a physician at Vocational Rehabilitation that Mother suffered from spousal abuse syndrome; (2) a psychiatrists report diagnosing Mother with probable dysthymia disorder secondary to [a] long history of criminal domestic violence; and (3) testimony from a marriage counselor that Mother had been in an abusive relationship with Father.  In addition, a DSS employee testified about first-hand observations of Mothers behavior that indicated Mother was afraid of Father.  Notwithstanding the concerns presented by all this evidence, Fathers testimony at the final hearing suggested he was still in denial about the problem.
Father also argues it was undisputed that he and Mother were not living together at the time of the termination hearing.  Whether or not this assertion was true, it would not preclude the family court from considering the fact that, on prior occasions, Father, contrary to court-approved terms, allowed unsupervised contact between the children and Mother.[7]
In response to the family courts finding that Father failed to complete counseling and did not comply with the treatment plan, Father presented evidence that he did in fact completed the court-ordered counseling programs.  He further characterizes testimony by DSS employees that he did not participate actively in the classes as weak evidence to support the termination of his parental rights.  Although we agree with Father that the evidence indicates he fulfilled the attendance requirement for the treatment programs, we reject his contention that his apparent lack of participation was an improper factor in the family courts decision.
According to the terms of the court-approved treatment plan, Father was to not only attend and complete the classes but also to be able to demonstrate a minimum level of understanding of the material and be able to apply it in the care of [his] children.  Considering this requirement, along with testimony that Father was only minimally compliant in his attendance,[8] we do not fault the family court for considering Fathers level of participation in the counseling programs to determine whether or not the treatment had the desired effect.
2.  In his brief, Father does not challenge the finding that the children have been in foster care for fifteen of the most recent twenty-two months and proceeds to argue that termination of his parental rights was not in the childrens best interests.  It therefore appears uncontested that DSS could proceed with the termination proceeding based on the ground that the children had been in custody of the State for at least fifteen of the past twenty-two months.[9]
3.  To the extent that Father has adequately argued to this court that termination of his parental rights was not in the childrens best interests,[10] we hold there is sufficient evidence to support the family courts finding to the contrary.  Although it was apparent that the children do respect, love and admire their dad, they were excelling in foster care and, according to their volunteer guardian ad litem, did not express a preference to live with either of their parents.  The guardian ad litem further testified that she was concerned about domestic violence in the home and believed that what was best for the children would be a solid home situation where they can be sure whats going to happen from day to day and month to month.  In view of this and other evidence, we uphold that family courts determination that the best interests of the children warrant the termination of Fathers parental rights.[11]
 AFFIRMED.
HEARN, C.J., and GOOLSBY and WILLIAMS, JJ., concur.

[1]  DSS was a party to this action because of the related litigation concerning the children.
[2]  Charleston County Dept of Soc. Servs v. Jackson, 368 S.C. 87, ___, 627 S.E.2d 765, 770 (Ct. App. 2006) (citing Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003)).
[3]  Id. (citing Richberg v. Dawson, 278 S.C. 356, 357, 296 S.E.2d 338, 339 (1982) and S.C. Dept of Soc. Servs. v. Parker, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999)).
[4]  Id. (citing S.C. Dept of Soc. Servs. v. Cummings, 345 S.C. 288, 293, 547 S.E.2d 506, 509 (Ct. App. 2001).
[5] Id. (citing Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996)).
[6]  See S.C. Code Ann. § 20-7-1572(1) (Supp. 2005) (listing the likelihood that the home can be made safe within twelve months as a factor in ordering termination of a parents rights).
[7]  See id. § 20-7-1572(1) (In determining the likelihood that the home can be made safe, the parents previous abuse or neglect of the child or another in the home may be considered.).
[8]  For instance, the director of the counseling program testified Father had to make up several unexcused classes and had left a class on one occasion immediately after signing in.
[9]  See S.C. Code Ann. § 15-7-1572(8) (Supp. 2005) (including a childs presence in foster care under the responsibility of the State for the fifteen of the most recent twenty-two months as a ground for termination of parental rights); Jackson, 358 S.C. at ___, 627 S.E.2d at 773 ([T]he purpose of the statutory ground allowing for termination if a child has been in foster care for fifteen of the last twenty-two months is to ensure children do not languish in foster care when termination of parental rights would be in their best interests.) (citing Doe v. Baby Boy Roe, 353 S.C. 576, 581, 578 S.E.2d 733, 736 (Ct. App. 2003)).
[10]  As stated in Fathers brief, the sole issue presented in this appeal is as follows:  Did the Family Court err in terminating Appellants parental rights where Appellant remedied the conditions that caused removal and there was no evidence that Appellant posed any threat of harm to his children whatsoever?  Although Father includes additional argument in his brief about the best interests of the children, this discussion is not presented under a separate statement of the issue.  See Rule 208(b)(1)(B), SCACR (Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.).
[11] See DSS v. Phillips, 365 S.C. 572, 582, 618 S.E.2d 922, 927 (Ct. App. 2005) (Yet, this desire to preserve the natural family bond must be balanced by the always paramount  controlling  concern that the best interest of the child be protected and advanced.).