THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Social Services, Respondent,
v.
 Charmaine H. and John Doe, whose true name is unknown, Defendants,
 Of whom Charmaine H. is Appellant.
 In the interests of: Charnell N. T. (dob:02/27/05), a minor under the age of 18.
 
 
 

Appeal from Lancaster County
 Roger E. Henderson, Family Court Judge

Unpublished Opinion No. 2006-UP-409
Submitted December 1, 2006  Filed December 13, 2006

AFFIRMED

 
 
 
Samuel R. Chandler, Jr., of Lancaster, for Appellant.
Angela M. Killian, of Lancaster, for Respondent.
 
 
 

PER CURIAM:  This is an appeal from the termination of Charmaine Hs[1] (Mothers) parental rights with respect to her infant daughter (Child).  Mother argues the family court erred in failing to place Child with Angelia M., the childs maternal grandmother (Grandmother).[2]  We affirm.[3]
FACTS
Mother gave birth to Child on February 27, 2005.  Because both Mother and Child tested positive for cocaine at the time, South Carolina Department of Social Services (the Department) removed Child from Mothers custody on March 1, 2005.  Mother admitted using cocaine the day before giving birth to Child.  On March 4, the family court held a probable cause hearing and determined probable cause existed for the Department to take emergency custody of Child.  Subsequently, the family court held a merits and permanency planning hearing.  On April 1, the family court approved the Departments plan of termination of parental rights and adoption concurrent with plans for custody to a suitable, fit and willing relative.[4]  
On November 1, the family court held a termination of parental rights (TPR) hearing.  Initially, the Department interpreted the April 1 order as one in which the judge ordered TPR and adoption, but in the event that T.P.R. and adoption falls through, the concurrent plan would be placement with a fit and willing relative.  Mother objected to this characterization of the April 1 order, arguing it called for a hearing to determine whether TPR and adoption or placement with a fit and willing relative would be in the best interests of Child.  
The Department presented evidence that Mother had used cocaine and crack cocaine for eleven years; failed to complete the treatment plan recommended by the Department with regard to the removal of two other children the year prior to Childs birth, including failing to participate in the outpatient drug treatment plan; tested positive in an exit drug screen from the inpatient drug treatment plan; and suffered from psychotic disorder, depressive disorder, anxiety disorder, and polysubstance dependence on cocaine, alcohol, and marijuana.  The Department presented evidence that Mothers condition was unlikely to change in the future.   
Evidence was also presented regarding whether Grandmother, who was caring for two of Mothers other children, would be a fit and willing custodian.  Because Grandmother lived in North Carolina, the Department submitted a home study conducted by the Union County, North Carolina, Department of Social Services (Union County).  Although Union County characterized the home study as favorable, the Department had several concerns.  The Department noted: (1) the household would be crowded, with Grandmother, her husband, her adult son, and two of Mothers other children already residing in the home; (2) Grandmothers husband (Husband) initially opposed the custodianship; (3) Husband had a drinking problem that caused Grandmother and the other children in the house to leave on occasion; (4) Grandmother was unemployed; (5) the household income did not appear to be enough to support the whole family; and (6) a previous home study on Grandmother had been unfavorable. 
On cross-examination, Mothers counsel showed Husband agreed to the custodianship and only had one drinking-related offense, a twelve-year-old DUI.  Moreover, the home study indicated Child would have her own bed and closet space in Grandmothers custody.  Additionally, the prior home study had been unfavorable due to Mothers failure to submit a required verification and Husbands refusal to allow more children to live in the home.  Both of these problems had been cured at the time of the second home study.  Furthermore, the more recent home study noted that Mothers two other children residing with Grandmother were well-adjusted and respectful.  One of the children received an academic scholarship to college while still in middle school.  Further, Grandmother had prior experience working with young children as a former teacher in the HeadStart program.  
On November 21, the family court issued an order terminating Mothers parental rights, finding that Mother had abused cocaine and crack cocaine for eleven years, rendering her unlikely to provide minimally acceptable care for Child, and that it was in Childs best interest for Mothers rights to be terminated.  The court also considered Mothers request to give custody to Grandmother.  The court reviewed the evidence presented for and against granting custody to Grandmother and determined Childs best interests would be served by terminating Mothers parental rights and preparing Child for adoption.  However, the court held should [Grandmother] qualify for adoption of the child, preference should be given to [Grandmother] since she is a blood relative.   
Pursuant to Ex Parte Cauthen, 291 S.C. 465, 354 S.E.2d 381 (1987), Mothers counsel attached a petition to be relieved stating he reviewed the record and found no issues meriting appeal.  Mother did not file a pro se brief.  This court conducted its review in accord with Cauthen and ordered the parties to brief the following issue:

Whether the family court erred in denying Mothers request that Grandmother be granted custody of Child?

STANDARD OF REVIEW
Generally, [i]n appeals from the family court, the appellate court has the authority to find the facts in accordance with its view of the preponderance of the evidence.  Ex parte Morris, 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006).  This is also true in termination of parental rights cases. 
Charleston County Dept of Soc. Servs. v. Jackson, 368 S.C. 87, 95, 627 S.E.2d 765, 770 (Ct. App. 2006) (holding that in an appeal from the termination of parental rights, an appellate court may review the record and make its own determination whether the grounds for termination are supported by clear and convincing evidence).  Despite this broad scope of review, however, the appellate court should not necessarily disregard the findings of the family court because the family court is in a better position to evaluate the credibility of the witnesses and assign weight to their testimony.  Id.  This degree of deference is especially true in cases involving the welfare and best interests of a minor child. 
Ex parte Morris, at 62, 624 S.E.2d at 652.
Custody decisions are matters left largely to the discretion of the family court.  Shirley v. Shirley, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000).  Furthermore, the appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the family court.  Id.
LAW/ANALYSIS
Mother contends the family court erred by failing to place Child with Grandmother.[5]  She argues that, pursuant to the permanency planning statute, the family court should have given compelling reasons for failing to place Child with Grandmother.  We disagree. 
As with all custody determinations, the best interest of the child is paramount in termination of parental rights cases.  Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003) (In a termination of parental rights . . . case, the best interests of the children are the paramount consideration.).  The purpose of the termination of parental rights statute is to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned . . . in order to protect children and to make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life.  S.C. Code Ann. § 20-7-1560 (Supp. 2005).
In the permanency planning stage prior to termination of parental rights, the Department may recommend several alternatives for placement of the child, including custody with a fit and willing relative.  S.C. Code Ann. § 20-7-766(A) (Supp. 2005).  Mother relies heavily on section 20-7-766(C), which provides:

At the permanency planning hearing, the court shall review the departments plan for achieving permanence for the child.  If the departments plan is not reunification with the parents, custody or guardianship with a fit and willing relative, or termination of parental rights, the department must show compelling reasons for the selection of another permanent plan.  If the court approves a plan that is not reunification with the parents, custody with a fit and willing relative, or termination of parental rights, the court must find compelling reasons for approval of the plan and that the plan is in the childs best interests.

S.C. Code Ann. § 20-7-766(C) (Supp. 2005) (emphasis added).  Further, our Supreme Court, in dicta, has interpreted section 20-7-766(G):  [The] family court at the permanency planning stage for a child removed from his home may award custody or legal guardianship to a suitable, fit, and willing relative or nonrelative.  Ex parte Morris, 367 S.C. 56, 63, 624 S.E.2d 649, 652 (2006) (interpreting section 20-7-766(G) in a parenthetical to show the Legislature contemplates non-relatives may play an important role in a childs life).
Mother argues the family court erred by failing to place Child with Grandmother because, as a fit and willing relative, the court has to give compelling reasons to place Child someplace else.  Mother has misapprehended the permanency planning statute.  Although the General Assembly has provided that fit and willing relatives should be considered, the statute provides that the family court must only give compelling reasons when it approves a plan that is something other than reunification with the parents, custody or guardianship with a fit and willing relative, or termination of parental rights.  S.C. Code Ann. § 20-7-766(C) (Supp. 2005).  Because the court approved of termination of Mothers parental rights, one of the options in the statute, the court did not err by failing to give compelling reasons for failing to place Child with Grandmother.  Further, section 20-7-766 does not address whether the Department or the family court must consider placement with a fit and willing relative before or after TPR.[6]    
Moreover, the family courts order does not preclude Grandmother from adopting Child.  The family court anticipated Grandmothers involvement in Childs adoption proceedings.  Although the family court did not expressly rule on whether Grandmother was a fit and willing relative, the court ordered the Department to give preference to Grandmother in the event she is found fit and willing.   
Although the family court approved of a permanent plan for termination of parental rights concurrent with placement with a fit and willing relative, we find the family court did not err in terminating Mothers parental rights.  Under these circumstances, we hold Childs best interests would be served by allowing the Department to complete its investigation of Grandmothers status as a fit and willing relative of Child.  See Joiner v. Rivas, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) (affirming the Court of Appeals finding that procedural rules are subservient to the courts
duty to zealously guard the rights of minors); Doe v. Baby Boy Roe, 353 S.C. at 579, 578 S.E.2d at 735 (holding the best interests of the child is paramount in termination of parental rights cases); Ex parte Dibble, 279 S.C. 592, 595, 310 S.E.2d 440, 442 (Ct. App. 1983) (Courts
have the inherent power to do all things reasonably necessary
to insure that just results are reached to the fullest extent possible.).  This procedure allows Grandmother to assert any rights she claims as a relative of Child.  
CONCLUSION
The family court properly terminated the parental rights of Mother.  In doing so, the court denied placement of Child with Grandmother.  However, the court did not foreclose the possibility of Grandmother adopting Child.  Because the court considered Childs best interest in its ruling, the family courts order is 
AFFIRMED.

 HEARN, C.J., BEATTY and SHORT, JJ., concur.

[1] In order to protect the identities of the parties, we refer to them only by their first names and the last initial.
[2] Childs father is unknown.  The unknown father was served by publication, and the family court terminated his parental rights.  He is not a party to this appeal.
[3]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[4] This order is not included in the record.  However, both the attorney for Mother and the family court paraphrased the April 1 order in almost identical language.  
[5]  Mother does not challenge the family courts decision to terminate her parental rights, and the record clearly supports the family courts decision.  As Mother does not appeal the termination of her parental rights, it is the law of the case. 
South Carolina Dept of Soc. Servs. v. Seegars, 367 S.C. 623, 628 n.3, 627 S.E.2d 718, 721 n.3 (2006) (holding that failure to appeal a family court ruling renders it the law of the case).
[6] In addition, we note Grandmother has not been made a party to the family courts proceedings.  Furthermore, we express our concern that Mother may not have standing to assert Grandmothers rights to receive custody of Child.